THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

WALTER B. SANDS,

    Defendant.

Case No. 06-20044-03-JAR

## AMENDED MEMORANDUM AND ORDER

This matter is before the Court on Defendant Walter B. Sands' Second Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) (Doc. 271).[1] The motion is fully briefed, and the Court is prepared to rule. As described more fully below, this Amended Memorandum and Order grants Defendant's motion for immediate compassionate release. The Court's prior order (Doc. 276) ruling on Defendant's Second Motion for Compassionate Release is amended and superseded by this Order.

**I.    Background**

On February 16, 2007, Defendant was convicted by a jury of : (1) conspiracy to possess with intent to distribute at least fifty grams of methamphetamine; (2) possession with intent to distribute or distribution of five grams or more of methamphetamine; (3) use of a firearm in furtherance of a drug trafficking crime; (4) possession with intent to distribute 50 grams or more of methamphetamine; and (5) being a felon in possession of a firearm.[2]

---

[1] Because Defendant appears *pro se*, the Court construes his pleadings liberally and holds them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[2] Doc. 123.

Prior to trial, the government filed an Enhancement Information, giving notice pursuant to 21 U.S.C. § 851 that Defendant had a previous conviction upon which the government would rely to request increased punishment.[3] The § 851 enhancement doubled the statutory mandatory minimums on the three drug counts. The mandatory minimum on the conspiracy count and the possession with intent to distribute 50 grams or more of methamphetamine count doubled from a 10-year to a 20-year mandatory minimum. And the mandatory minimum on the possession with intent to distribute 5 grams or more of methamphetamine count doubled from a 5-year to a 10-year mandatory minimum.

The Presentence Investigation Report ("PSIR") held Defendant accountable for 1.98 kilograms of actual methamphetamine based on one controlled buy, seizures of methamphetamine from Defendant's residence and vehicle, and admissions Defendant made about quantities of methamphetamine he had purchased from two suppliers. The methamphetamine Defendant sold in the controlled transaction and the methamphetamine seized from his residence and vehicle ranged in purity from 28 to 56 percent. The PSIR calculated the methamphetamine amounts based on Defendant's admissions at 40 percent, the average of the purity of the amounts actually purchased and/or seized from Defendant. The court overruled Defendant's objections to the PSIR and adopted its calculations.[4]

The PSIR calculated Defendant's sentencing guideline range as follows: based on 1.98 kilograms of actual methamphetamine, a Base Offense Level of 38, with no adjustments up or down, for a Total Offense Level of 38; the total criminal history points were 16, such that Defendant was a Criminal History Category VI; his sentencing guideline range was thus 360

---

[3] Doc. 112.

[4] In 2007, the District of Kansas did not file PSIRs on CMECF.

months to life on the three drug counts, 120 months on the felon in possession count, and 60 months consecutive on the § 924(c) count.

On September 24, 2008, the court[5] sentenced Defendant to 360 months on the three drug counts running concurrently, 120 months on the felon in possession count running concurrently with the drug counts, and 60 months on the § 924(c) count running consecutively to all other counts, for a controlling sentence of 420 months' imprisonment.[6]

The Tenth Circuit dismissed Defendant's appeal and affirmed his convictions and sentence.[7] Defendant filed a postconviction petition under 28 U.S.C. § 2255, which was denied.[8] The Tenth Circuit denied Defendant a certificate of appealability and dismissed the § 2255 appeal.[9]

On February 10, 2015, Defendant's sentence was reduced from a controlling sentence of 420 months to a controlling sentence of 384 months' imprisonment, a 36-month reduction, pursuant to 18 U.S.C. § 3582(c)(2), based on a guideline sentencing range that had subsequently been lowered by two levels and made retroactive by the Sentencing Commission.[10]

On July 20, 2020, Defendant filed his first motion[11] requesting compassionate release due to his underlying medical conditions of obesity, diabetes, hypertension, sleep apnea, and the risk

---

[5] Defendant was sentenced by Judge Carlos Murguia. This case was reassigned to the undersigned judge in July 2020.

[6] Doc. 183.

[7] *United States v. Sands*, 329 F. App'x 794 (10th Cir. 2009).

[8] Docs. 214, 235.

[9] Doc. 243.

[10] Doc. 246. Defendant's original sentence was based on a Total Offense Level 38 and Criminal History Category VI, which had a resulting guideline range of 360 months to life. After the two-level reduction, Defendant's Total Offense Level of 36 and Criminal History Category VI resulted in a guideline range of 324 to 405 months. Judge Carlos Murguia ordered Defendant's sentence reduced to 384 months.

[11] Doc. 247.

of severe complications or death should he contract COVID-19 while in prison. The Court denied the motion.[12] The Tenth Circuit affirmed the Court's decision on August 6, 2021, and the Supreme Court denied Defendant's petition for certiorari review. [13]

Defendant is currently incarcerated at FCI Leavenworth with a projected release date of August 7, 2027.

## II. Discussion

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but th[at] rule of finality is subject to a few narrow exceptions.' One such exception is contained in § 3582(c)(1)."[14] Section 3582(c)(1)(A), as amended by the First Step Act of 2018,[15] permits a court to reduce a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Before reducing a term of imprisonment under the compassionate release provision, a court must find that (1) "extraordinary and compelling reasons" warrant a sentence reduction, (2) such a reduction is consistent with "applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors set forth in 18 U.S.C. § 3553(a) support such a reduction.[16] The Court may deny a § 3582(c)(1)(A) motion "when any of the three

---

[12] *United States v. Sands*, No. 06-20044-03-JAR, 2020 WL 6343303 (D. Kan. Oct. 20, 2020).

[13] *United States v. Hald*, 8 F.4th 932, 949 (10th Cir. 2021), *cert.denied*, *Hald v. United States*, 142 S.Ct. 2742 (2022).

[14] *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (alteration in original) (quoting *Freeman v. United States*, 564 U.S. 522, 526 (2011)).

[15] Pub. L. No. 115-391, 132 Stat. 5194.

[16] 18 U.S.C. § 3582(c)(1)(A); *see United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).

prerequisites listed in § 3582(c)(1)(A) is lacking and do[es] not need to address the others."[17] If the Court grants the motion, however, it must address all three steps.[18]

### A. Exhaustion

Exhaustion under § 3582(c)(1)(A) is a mandatory claim-processing rule that the Court must enforce when the government invokes it.[19] Here, the government concedes that Defendant has properly exhausted his claim. The Court thus proceeds to the merits.

### B. Extraordinary and Compelling Reasons

Section 3582(c)(1)(A) requires a district court to find that "extraordinary and compelling reasons warrant a sentence reduction" before it may grant the motion. The court has "the authority to determine for [itself] what constitutes 'extraordinary and compelling reasons.'"[20] That authority "is bounded by the requirement . . . that a reduction in sentence be consistent with applicable policy statements issued by the Sentencing Commission."[21] Before November 1, 2023, the Sentencing Commission had not issued a policy statement "applicable" to § 3582(c)(1)(A) motions filed by a defendant.[22] Thus, § 3582(c)(1)(A)'s consistency requirement did not constrain the Court's discretion to consider whether extraordinary and compelling reasons warranted a sentence reduction.[23]

On November 1, 2023, a new Sentencing Commission policy statement became effective that is "plainly applicable to motions for sentence reduction filed by either the Director of the

---

[17] *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021) (emphasis omitted) (quoting *McGee*, 992 F.3d at 1043).

[18] *McGee*, 992 F.3d at 1043 (quoting *United States v. Navarro*, 986 F.3d 668, 670 (6th Cir. 2021)).

[19] *See United States v. Hemmelgarn*, 15 F.4th 1027, 1031 (10th Cir. 2021).

[20] *United States v. Maumau*, 993 F.3d 821, 832 (10th Cir. 2021).

[21] *Id.*

[22] *See id.*

[23] *Id.* at 836–37.

Bureau of Prisons or a defendant."[24] The policy statement lists grounds that constitute extraordinary and compelling circumstances and provides additional guidance for courts. The listed grounds are medical circumstances, age, family circumstances, whether the defendant was a victim of abuse while in custody, "other reasons," and whether the defendant served an "unusually long sentence" where there has been a change in law.[25] The Sentencing Commission "considered but specifically rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons."[26] Rather, the catch-all provision allows the Court to consider any circumstances which are similar "in gravity" to the listed categories.[27]

Defendant argues the following as extraordinary and compelling reasons justifying his compassionate release in this case: (1) he is serving a "draconian" sentence that would be substantially lower under the current sentencing scheme, (2) the disparity between sentences based on actual methamphetamine and methamphetamine mixtures, and (3) family circumstances—he needs to care for his wife.

**1. Unusually Long Sentence**

Defendant argues that his "draconian" sentence represents an unusually long sentence under Sentencing Guideline § 1B1.13(b)(6) that should be reduced because, under the law today, his prior drug felony was not a "serious drug offense" that would trigger a sentencing enhancement under 21 U.S.C. § 851.

Under the policy statement, an "unusually long sentence" may form the basis of extraordinary and compelling circumstances as follows:

---

[24] *United States v. Bradley*, 97 F.4th 1214, 1217 at n.1 (10th Cir. 2024).

[25] U.S.S.G. § 1B1.13(b).

[26] U.S. Sent. Comm'n, Supp. to Appx. C, Amendment 814, Reasons for Amendment, at 207.

[27] *Id.*; U.S.S.G. § 1B1.13(b)(5).

> If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.[28]

Defendant is effectively seeking a retroactive application of Section 401 of the First Step Act[29] which, amongst other things, narrowed the scope of convictions triggering enhanced penalties under 21 U.S.C. § 851.  But the First Step Act does not retroactively apply to Defendant because Congress plainly limited its application to sentences imposed after it became effective.[30]  Defendant was sentenced in September 2008, a decade before the First Step Act became effective in December 2018.

If the First Step Act did apply retroactively to Defendant, he would have been subject to a lesser mandatory minimum sentence.  Section 401 redefined the type of offense that would qualify for a § 851 enhancement, from a "felony drug offense" to a "serious drug felony."[31]  As now written, a "serious drug felony" is an offense for which "(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instance offense."[32]  For Defendant's prior drug offense, possession of methamphetamine, he served a term of 30 months imprisonment beginning in 1999, and he was released from that term of imprisonment in 2005,

---

[28] U.S.S.G. § 1B1.13(b)(6).

[29] Pub. L. No. 115-391, § 401, 132 Stat. 5195.

[30] Pub. L. No. 115-391, 132 Stat. 5195.

[31] *Id.*

[32] 21 U.S.C. § 802(57).

7

about one year before the instant offense. Thus, Defendant's prior offense would have qualified as a serious drug felony under the First Step Act and he would have been eligible for a 15-year mandatory minimum rather than the 20-year mandatory minimum on Counts 1 and 4.

Nonetheless, while the Court acknowledges that there is a five-year discrepancy, this Court cannot find that the difference between the 20-year mandatory minimum and the 15-year mandatory minimum renders a gross disparity between the sentence Defendant is serving and the sentence that likely would have been imposed after the First Step Act became effective. For Defendant's sentence is a far longer sentence than the statutory mandatory minimum sentence, based on the Sentencing Guidelines. The amended guideline range for Defendant's three drug counts is 324–405 months, a concurrent 120 months for the felon in possession count, and a consecutive 60 months for the § 924(c) count. Thus, Defendant fails to establish that he is entitled to relief on this ground.

### 2. Methamphetamine Disparity

Defendant also offers as an extraordinary and compelling reason the ten-fold disparity in the guideline calculation of actual methamphetamine versus methamphetamine mixture, leading some courts to have a policy disagreement with this sentencing guideline disparity.[33] While this Court rejects any suggestion that the disparity in the calculation of actual methamphetamine versus methamphetamine mixture is alone a sufficient reason to grant relief, the disparity in some circumstances may be a relevant consideration. This is such a circumstance.

Courts that have articulated a policy disagreement with the disparity in actual methamphetamine versus methamphetamine mixture have noted several concerns. First the 10-

---

[33] To the extent Defendant conflates this argument with the argument that his sentence is 1/3 longer than the national average for drug sentences, the Court rejects that argument. The Court finds no basis to consider what the national average sentence is for a particular offense, because that average is not based on sentences imposed on similarly situated defendants.

to-1 disparity is neither based on science nor empirical evidence.[34] Second, there is too much emphasis placed on the purity of methamphetamine, which does not always correlate with a defendant's culpability or level in the hierarchy of a drug trafficking organization.

This second argument resonates with the Court in this particular case. Here, Defendant transacted in quantities of methamphetamine that ranged between 28 and 56 percent purity. Defendant sold 24.5 grams of methamphetamine on November 29, 2005 that was 56% pure; the PSIR converted this to 13.7 grams of actual methamphetamine. On November 30, 2005, methamphetamine was seized from Defendant's residence or vehicle. Specifically, authorities seized: (1) 6.8 grams that was 47% pure (the PSIR converted this to 3.2 grams of actual methamphetamine); (2) 1.3 grams of methamphetamine that was 28% pure (the PSIR converted this to .36 grams of actual methamphetamine); and (3) 297.3 grams of methamphetamine that was 29% pure (the PSIR converted this to 86.2 grams of actual methamphetamine). The PSIR thus converted a total of 329.9 grams of methamphetamine mixture with purity ranging from 28 to 56% to 103.5 grams of actual methamphetamine.

Further, the PSIR added drug amounts attributed to Defendant based on admissions he made to agents during an interview. Defendant admitted that from June 2005 to about February 2006 (two weeks before his March 8, 2006 arrest) he purchased a total of approximately 823 grams of methamphetamine from one supplier. The PSIR calculated this as 329 grams of actual methamphetamine, based on an assumption that it was 40% pure, the average of the purity of the methamphetamine Defendant sold on November 29 and the methamphetamine seized from his residence and vehicle on November 30, 2005. Defendant further admitted to agents that about

---

[34] *See, e.g.*, the well-reasoned opinion of Judge Brack in *United States v. Ibarra-Sandoval*, 265 F. Supp. 3d 1249, 1252–58 (D.N.M. 2017).

two months prior to his March 2006 arrest he purchased a total of approximately 3,856 grams of methamphetamine from a different supplier. The PSIR again assumed that the purity was 40% and calculated this as 1,542 grams of actual methamphetamine.

Thus, of the total 1,975 grams (1.98 kilograms) of actual methamphetamine attributed to Defendant, 1,871 grams (1.87 kilograms) was based on Defendant's admissions of amounts he procured from two suppliers and based on an assumption that the purity was 40%, which was simply the average purity of the much lesser quantities that Defendant actually sold or had in his possession at his residence or in his vehicle.

Under these circumstances, the Court is troubled by the conversion of methamphetamine mixture to actual methamphetamine for several reasons. First, the purity of the amounts that were actually tested was low, ranging from 28 to 56%. This suggests the very circumstance that has troubled many judges who have articulated a policy disagreement with the guidelines. While some have questioned whether purity equates or correlates with culpability, it is fair to say that generally, the less the purity level, the lower the purchaser in the hierarchy of the drug trafficking organization. Stated another way, one that procures methamphetamine with purity at or near 100%, is likely to be procuring it from the original source or the original source's middleman. But one procuring methamphetamine with purity in the range of 28 to 56% is likely procuring methamphetamine that has passed through multiple middlemen, who have cut the substance to increase their profit margin. In this sense, there is some correlation between the purity of the methamphetamine and how high the seller is in the hierarchy of the drug trafficking organization.

Moreover, in this case, not only was Defendant selling or in possession of methamphetamine with relatively low purity, he sold and was in possession of small amounts of

10

methamphetamine mixture. He sold 24.5 grams and officers seized from his residence and vehicle another 305.4 grams, for a total of 329.9 grams recovered from him through the controlled buy or seizures. This starkly contrasts with the 4,679 grams of methamphetamine mixture based on Defendant's admissions to officers about his historical course of dealing. Further, the fact that the lion's share of the methamphetamine attributed to him could not be tested for purity and was converted to actual methamphetamine based on the average purity of methamphetamine actually obtained from him highlights the potential unfairness in converting methamphetamine mixture to actual methamphetamine in this case.

For this reason, the Court finds the disparity in actual methamphetamine and methamphetamine mixture is an extraordinary and compelling reason for relief in this case. The Court is not ruling that the disparity is per se an extraordinary and compelling reason in all cases, but as applied in this case it certainly is.

The government concedes that if the methamphetamine were calculated as methamphetamine mixture rather than actual methamphetamine in this case, instead of a base offense level of 36[35] it would be a base offense level of 32. At Total Offense Level 32, Criminal History Category VI, Defendant's guideline range would be 210–262 months. A sentence at the low end of this range—210 months—acknowledges the gross disparity under the specific facts of this case between the methamphetamine calculation based on actual methamphetamine versus methamphetamine mixture.[36]

---

[35] This recognizes the two-level reduction that Defendant received in response to an earlier guideline amendment.

[36] Defendant was previously sentenced on the drug counts at the low end of the guideline range. Doc. 246.

11

### 3. Family Circumstances- Care for Wife

Finally, Defendant seeks compassionate release so that he can spend time with his wife before she passes. According to an attached letter from his wife, she is being cared for by her brother and his wife. Thus, Defendant has not established that he is the sole available caregiver available for his wife per the requirements of Section 1B1.13(b)(3)(A).[37]

### 4. Section 3553 Factors

Given the Court has found that Defendant has shown an extraordinary and compelling reason for compassionate release in this case, the as-applied effect of the disparity between actual methamphetamine and methamphetamine mixture, the Court must further consider whether the § 3553 factors warrant a reduction in sentence. Those factors include: (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; (4) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; and (5) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."[38] "[T]he facts allegedly establishing extraordinary and compelling reasons for release . . . . are relevant to the § 3553(a) analysis."[39]

---

[37] *See, e.g.*, *United States v. Burrough*, No. 3:04-CR-00191-FDW, 2022 WL 2318512, at *5 (W.D.N.C. June 28, 2022) (generally defendant must show he is the sole available caregiver for his minor child or a closely related and incapacitated adult family member)).

[38] 18 U.S.C. § 3553(a).

[39] *United States v. Bradley*, 97 F.4th 1214, 1218 (10th Cir. 2024) (quoting *United States v. Hald*, 8 F.4th 932, 943 (10th Cir. 2021)).

While the Court takes all § 3553 factors into account, those most pertinent to Defendant's case are the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, the need to provide adequate deterrence, and the aforementioned facts that established an extraordinary and compelling reason based on the effect of sentencing him on the basis of actual methamphetamine versus methamphetamine mixture.

The nature and circumstances of the offense are serious. A jury convicted Defendant of six serious offenses including conspiracy to possess with intent to distribute at least fifty grams of methamphetamine, possession with the intent to distribute at least fifty grams of methamphetamine, the use of a firearm in furtherance of a drug trafficking crime and being a felon in possession of a firearm. This factor weighs against compassionate release.

Defendant's history and characteristics include an extensive criminal history, prior gang involvement, and negative performance while on probations and parole. However, Defendant has demonstrated a great degree of rehabilitation while incarcerated these last 18 years. He has worked in federal prison industries or in other prison positions in each of the three prison facilities he has been housed. He has also participated in a variety of prison programs aimed at personal development and improvement. This factor weighs in favor of Defendant's release.

And as the Court described, the fact that Defendant's sentence was largely calculated based on Defendant's admissions of his historical course of dealing and based on an assumption as to the purity of those drugs and then converting those amounts from methamphetamine mixture to actual methamphetamine are circumstances the Court cannot ignore. All of this contributed to a much longer sentence than he would have received had the methamphetamine been treated as a methamphetamine mixture. The time Defendant has already served in prison

appropriately reflects the seriousness of the offense and addresses the need to provide adequate deterrence.

The Court grants Defendant's motion for compassionate release —reducing his custodial sentence to time served.  The Court acknowledges that Defendant's offenses of conviction carry mandatory minimum sentences, but exercises its discretion to sentence Defendant below the mandatory minimums.[40]  This sentence provides just punishment and is sufficient, but not greater than necessary.

**IT IS THEREFORE ORDERED BY THE COURT** that Defendant's motion for compassionate release is **granted** —reducing his controlling sentence from 384 months to time served.  The Court's December 18, 2024 Order reducing Defendant's sentence to 300 months is amended and superseded by this Order.

**IT IS FURTHER ORDERED BY THE COURT** that there being a verified residence and an appropriate release plan in place, this Order is stayed for up to 14 days to make appropriate travel arrangements and to ensure Defendant's safe release.  Defendant shall be released as soon as appropriate travel arrangements have been made and it is safe for him to travel.  There shall be no delay in ensuring travel arrangements are made.  If more than 14 days are needed to make appropriate travel arrangements to ensure Defendant's safe release, then the parties shall immediately notify the Court and show cause why the stay should be extended.

**IT IS SO ORDERED.**

Dated: January 21, 2025

---

[40] *See United States v. Maumau*, 993 F.3d 821 (10th Cir. 2021) (affirming district court's reduction of defendant's sentence below the applicable mandatory minimum).

<div style="text-align: right;">
<u>S/ Julie A. Robinson</u>  
JULIE A. ROBINSON  
UNITED STATES DISTRICT JUDGE
</div>